[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 13, 2005
THOMAS  K. KAHN
CLERK

_____

No. 04-16459
Non-Argument Calendar

_____

D. C. Docket No. 04-80086-CV-WPD

JEREMY MIGUT,

                                                            Plaintiff-Appellant,

versus

SEAN FLYNN, Sheriff,
Palm Beach County Sheriff's Department,
BARRY KRISCHER,
State Attorney,

                                                            Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 13, 2005)

Before ANDERSON, CARNES and HULL, Circuit Judges.

PER CURIAM:

Plaintiff Jeremy Migut appeals the district court's (1) order dismissing his 42 U.S.C. § 1983 false-arrest claim against Deputy Sheriff Sean Flynn based on qualified immunity, and (2) subsequent order denying Migut's summary judgment motion and granting <u>sua sponte</u> summary judgment to Deputy Sheriff Flynn and State Attorney Barry E. Krischer on Migut's claim for a declaratory judgment. Migut sought a declaratory judgment that tape-recording a police officer during a traffic stop does not violate Fla. Stat. Ann. § 934.03, which prohibits the intentional interception of certain communications. After review, we affirm.

## I. BACKGROUND

Migut is a tow truck operator and is employed by a company specializing in removing illegally parked cars from private property.[1] On September 10, 2002, Deputy Sheriff Flynn stopped Migut for disobeying a stop sign. During the stop, Migut began to record his conversation with Deputy Sheriff Flynn with a handheld tape recorder. Upon noticing the recorder, Deputy Sheriff Flynn told Migut to turn the recorder off. Migut refused and Deputy Sheriff Flynn placed Migut under

---

[1]Given the Rule 12(b)(6) posture of the qualified immunity claim, we review the complaint as if all of the allegations contained therein are true. <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1355 & n.1 (11th Cir. 2003) ("Because we must accept the allegations of plaintiffs' amended complaint as true, what we set out in this opinion as 'the facts' for Rule 12(b)(6) purposes may not be the actual facts."). Further, as for the summary judgment, we review the facts in the light most favorable to the non-moving party. <u>See Draper v. Reynolds</u>, 369 F.3d 1270, 1272 n.1 (11th Cir. 2004).

arrest for intercepting an oral communication in violation of Fla. Stat. Ann. § 934.03.[2]

Subsequently, State Attorney Barry E. Krischer charged Migut with violation of § 934.03(1)(a). On December 18, 2002, the charge was dismissed by an entry of nolle prosse, which stated "[a]lthough there was probable cause for arrest and charge of the Defendant, the State has entered a Nolle Prosse in this case."

Migut brought suit against Deputy Sheriff Flynn and State Attorney Krischer. Migut's first amended complaint sued Deputy Sheriff Flynn for false arrest under § 1983 (count 1), and Deputy Sheriff Flynn and State Attorney Krischer for a declaratory judgment that § 934.03 is not violated when a motorist records a conversation with a police officer during a routine traffic stop (count 2).

Deputy Sheriff Flynn filed a Rule 12(b)(6) motion to dismiss Migut's § 1983 false-arrest claim based on qualified immunity. On May 13, 2004, the district court granted Deputy Sheriff Flynn's motion to dismiss, concluding that

---

[2]Section 934.03 provides in relevant part:
(1) Except as otherwise specifically provided in this chapter, any person who:
(a) Intentionally intercepts, [or] endeavors to intercept . . . any wire, oral, or electronic communication; . . . shall be punished as provided in subsection (4).
Fla. Stat. Ann. § 934.03(1)(a).

Migut's arrest was supported by arguable probable cause and that Deputy Sheriff Flynn was thus entitled to qualified immunity.

Migut then moved for summary judgment on count 2, his claim for a declaratory judgment. The district court denied Migut's summary judgment motion and granted sua sponte summary judgment to Deputy Sheriff Flynn and State Attorney Krischer on count 2. Migut now appeals the final judgment entered on both counts 1 and 2.

## II. DISCUSSION

### A.     Qualified Immunity Principles

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003) (internal quotation marks and citations omitted). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." Id. at 1357-58 (citation omitted). In this case, it is clear – and undisputed – that Deputy Sheriff Flynn was acting within his discretionary authority.

4

"Once a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." Id. at 1358. The Supreme Court has established a two-part test to determine the applicability of qualified immunity. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Hope v. Pelzer, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513 (2002) (citation omitted). "If, under the plaintiff's allegations, the defendants would have violated a constitutional right, 'the next, sequential step is to ask whether the right was clearly established.'" Cottone, 326 F.3d at 1358 (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001)).

## B.    Migut's False-Arrest Claim

"A warrantless arrest is constitutionally valid only when there is probable cause to arrest." Holmes v. Kucynda, 321 F.3d 1069, 1079 (11th Cir. 2003). Probable cause existed if, "at the moment the arrest was made, 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing' that [the suspect] had committed or was committing an offense." Dahl v. Holley, 312 F.3d 1228, 1233 (11th Cir. 2002) (quoting Hunter v. Bryant, 502 U.S. 224, 228,

5

112 S. Ct. 534, 537 (1991)). However, "[t]o receive qualified immunity protection, an officer need not have actual probable cause but only arguable probable cause." Holmes, 321 F.3d at 1079 (internal quotation marks and citation omitted). To determine whether an officer has arguable probable cause, the inquiry is "whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Id. (quotation marks and citation omitted). Thus, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Hunter, 502 U.S. at 227, 112 S. Ct. at 536 (citation omitted).

As discussed above, Deputy Sheriff Flynn, after noticing that Migut was taping their conversation and asking Migut to stop doing so, placed Migut under arrest for intercepting an oral communication in violation of Fla. Stat. Ann. § 934.03(1)(a).[3]

Section 934.03 provides in relevant part:

(1) Except as otherwise specifically provided in this chapter, any person who:

---

[3]"We review de novo a dismissal for failure to state a claim, and a complaint may not be dismissed under Fed.R.Civ.P. 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Magluta v. Samples, 256 F.3d 1282, 1283-84 (11th Cir. 2001) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).

(a) Intentionally intercepts, [or] endeavors to intercept . . . any wire, oral, or electronic communication; . . . shall be punished as provided in subsection (4).

Fla. Stat. Ann. § 934.03(1)(a). Subsection (4) provides that it is a third degree felony to intercept a wire, oral, or electronic communication. Fla. Stat. Ann. § 934.03(4).

Section 934.02(3) defines "intercept" as "the aural or other acquisition of the contents of <u>any</u> wire, electronic, or <u>oral communication</u> through the use of any electronic, mechanical, or other device." Fla. Stat. Ann. § 934.02(3) (emphasis added). Considering this definition of intercept, the Florida Supreme Court has determined that § 943.03 prohibits the tape recording of a face-to-face conversation in which one is participating without the consent of all parties. <u>See</u> <u>State v. Tsavaris</u>, 394 So.2d 418, 420 (Fla. 1981), <u>receded from on other grounds</u>, 478 So.2d 38 (1985); <u>see also</u> <u>Guilder v. State</u>, – So.2d – , 2005 WL 714859, *3-*4 (Fla. Dist. Ct. App. March 30, 2005).

Section 934.02(2) defines "oral communication" as

any oral communication uttered by a person <u>exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation</u> and does not mean any public oral communication uttered at a public meeting or any electronic communication.

7

Fla. Stat. Ann. § 934.02(2) (emphasis added).[4]  For an oral conversation to be

protected under § 934.03(1)(a), Florida courts have indicated that the speaker must

have an actual subjective expectation of privacy, along with a societal recognition

that the expectation is reasonable.  State v. Inciarrano, 473 So.2d 1272, 1275 (Fla.

1985).  "Where both elements are present, the statute has been violated whether

the intercepted communication is private in nature or not."  Stevenson v. State,

667 So.2d 410, 412 (Fla. Dist. Ct. App. 1996) (citation omitted).

"A significant factor used in determining the reasonableness of the

defendant's expectation of privacy in a conversation is the location in which the

conversation or communication occurs."  Id.  "'Conversations occurring inside an

enclosed area or in a secluded area are more likely to be protected under section

934.02(2).'"  Id. (quoting Cinci v. State, 642 So.2d 572, 573 (Fla. Dist. Ct. App.

1994).  However, under Florida law, public places are not necessarily excluded

from the statute, except when the public place is a public meeting.  See Brandin v.

State, 669 So.2d 280, 281 (Fla. Dist. Ct. App. 1996) ("We cannot agree with the

state's assertion that conversations occurring in public areas can never be made

---

[4]"The Florida Supreme Court has interpreted the test set forth in this definition as substantially the same test used in a Fourth Amendment right to privacy analysis."  Stevenson, 667 So.2d at 412.

8

with an expectation of privacy. Common experience teaches that the opposite may often be true.").

Besides location, "[o]ther significant factors used in determining the reasonableness of the defendant's expectation of privacy are the manner in which the oral communication is made and the kind of communication." Stevenson, 667 So.2d at 412.

This Court has been unable to locate a case in which a Florida court has specifically held that police officers have a reasonable expectation of privacy in their conversations with citizens.[5] However, one Florida court has concluded that an officer had probable cause to believe a violation of § 934.03(1)(a) occurred

---

[5]We do note that citizens do not have a reasonable expectation of privacy in their conversations when a police officer is a party to the conversation and the purpose of the interception is to obtain evidence of a criminal act. See § 934.03(2)(c). Section 934.03(2)(c) provides:

> It is lawful under §§ 934.03-934.09 for an investigative or law enforcement officer or a person acting under the direction of an investigative or law enforcement officer to intercept a wire, oral, or electronic communication when such person is a party to the communication or one of the parties to the communication has given prior consent to such interception and the purpose of such interception is to obtain evidence of a criminal act.

Fla. Stat. Ann. § 934.03(2)(c) (emphasis added); see also Madsen v. State, 502 So.2d 948, 949 (Fla. Dist. Ct. App. 1987) (stating that § 943.03 "exempts from its operation the interception of oral communications by a police officer when the officer is one of the communicants or where one party to the conversation has given prior consent to the interception"). However, there is no similar statutory provision providing that a citizen may intercept the communication of a police officer.

when the suspect had recorded a conversation with another officer without that officer's consent. State v. Keen, 384 So.2d 284 (Fla. Dist. Ct. App. 1980).

In Keen, the defendant Keen visited the jail seeking to have a bugging device (that was seized earlier in the day) returned to him. Officer Frawley, who had noticed Keen at the jail earlier, engaged Keen in conversation about his bugging device. During the conversation, Keen took out a small tape recorder and held it in the palm of his hand. At the conclusion of the conversation, Keen put the tape recorder back in his pocket. Id. at 285. Officer Frawley contacted Sergeant Deludes in the Sheriff's Office to tell him to stop Keen's car if he saw it and seize the small tape recorder because Keen had recorded Frawley without Frawley's consent. Id. at 286. Officer Deludes subsequently stopped Keen's vehicle and seized the recorder. The issue in Keen was whether there was sufficient probable cause to stop Keen's car, thus validating the seizure of the tape recorder. Id.

The Keen court concluded that Deludes had a "rational basis for formulating a probable belief that a violation of Section 934.03(1)(a) had occurred" and thus, there was probable cause for the stop. In doing so, the Florida court stated:

> It is obvious from the record that Frawley [the officer at the jail] had good reason to believe that the appellee was probably bugging him, especially when we consider that he had prior knowledge that the

10

appellee was carrying the bugging device. . . . The evidence indicates that Frawley had a rational basis for formulating a probable belief that a violation of Section 934.03(1)(a) had occurred. The cumulative effect of the information and observations known to Frawley, combined with his expertise, knowledge, and skill as a police officer, were sufficient to give him reasonable grounds for believing that the appellee was engaged in the commission of a crime.

Keen, 384 So.2d at 287. Thus, the Florida court determined that there was probable cause to believe that Keen's tape recording of Officer Frawley was a violation of § 934.03(1)(a).

The issue in this case is whether, considering the facts as set forth in the complaint, Deputy Flynn had at least arguable probable cause to believe that Migut was violating § 934.03(1)(a) when Migut taped their conversation. We conclude that he did. There is no dispute that Migut intentionally intercepted via tape recorder his conversation with Deputy Sheriff Flynn, and that Deputy Sheriff Flynn did not consent. Moreover, it was not unreasonable for Deputy Sheriff Flynn to expect that the conversation would be protected under § 934.03(1)(a). See Keen, 384 So.2d at 287.

Accordingly, Deputy Sheriff Flynn did not violate Migut's constitutional rights, and the district court properly dismissed the false-arrest claim against Flynn based on qualified immunity.

## C. Migut's Declaratory Judgment Claim

11

Migut also appeals the district court's order denying Migut's summary judgment motion and granting sua sponte summary judgment to Deputy Sheriff Flynn and State Attorney Krischer on Migut's claim for declaratory relief.

In the district court, Migut sought a declaratory judgment stating that "on the public street, or in any other public place, Florida Statute § 934.03 does not afford an officer of the law a legal right not to have his conversations with a citizen recorded while conducting an investigatory traffic stop." The district court denied declaratory relief, stating that "[i]f the [Florida] legislature had intended that citizens could be allowed to tape record police officers' conversations, they could have said so."

We conclude that the district court properly denied Migut's request for declaratory relief. First, § 934.03 is unambiguous and does not include an exception for a private individual who records a police officer without the officer's consent. See § 934.03 (prohibiting some interception conduct and allowing other interception conduct). Second, Migut points to no United States Supreme Court, Eleventh Circuit, or Florida state court decision holding that the communications of police officers conducting traffic stops are not protected by § 934.03. Indeed, the only Florida decision addressing this issue actually concluded that it was reasonable for the police officer to believe a violation of § 934.03(1)(a)

occurred when the suspect had recorded a conversation with another officer without that officer's consent.  See Keen, 384 So.2d at 287.

Third, communications in public places are not necessarily excluded from § 934.03 (except when the public place is a public meeting).  See Brandin, 669 So.2d at 281 ("We cannot agree with the state's assertion that conversations occurring in public areas can never be made with an expectation of privacy. Common experience teaches that the opposite may often be true.").  Thus, just because a traffic stop takes place on a public street does not mean that the police officer's communication is not protected under § 934.03.  Fourth, the communication does not have to be private to be protected.  See Stevenson, 667 So.2d at 412 ("Where both elements are present, [§ 934.03] has been violated whether the intercepted communication is private in nature or not.").  Thus, the fact that the police officer's communication occurred during a traffic stop on a public street does not necessarily mean that it is not protected under § 934.03.

Finally, whether a particular communication is protected under § 934.03(1)(a) is an intensely fact-specific inquiry, and we are not prepared to hold that the Florida legislature intended to exclude from the protections of § 934.03 all citizen communications with all police officers during all traffic stops on a public street.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Migut's § 1983 false-arrest claim. We also affirm the district court's denial of summary judgment to Migut and grant of summary judgment to the defendants on Migut's claim for declaratory relief.

**AFFIRMED.**